[Cite as *State v. Lucas*, 2014-Ohio-3876.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 BE 29 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MARK ALLEN LUCAS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Belmont County, Ohio
Case No. 12 CR 072

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Atty. Christopher Berhalter
Belmont County Prosecutor
Atty. Helen Yonak
Assistant Prosecuting Attorney
147-A West Main Street
St. Clairsville, Ohio  43950

For Defendant-Appellant:     Atty. Scott C. Essad
721 Boardman-Canfield Road
Suite 201
Boardman, Ohio  44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  September 8, 2014

WAITE, J.

{¶1} Appellant Mark Allen Lucas pleaded guilty to a reduced charge of receiving stolen property in Belmont County Common Pleas Court. At sentencing, the trial court imposed the community control sanctions recommended in the plea agreement. After sentencing, Appellant filed a motion to withdraw his plea. The trial court denied Appellant's postsentencing motion. Appellant appeals this denial, alleging his plea was not knowingly entered. Appellant's three assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} On February 6, 2012 Appellant was charged with breaking and entering, a violation of R.C. 2911.13, and receiving stolen property, a violation of R.C. 2913.51, in a criminal complaint. The matter was set for a plea hearing in lieu of indictment. The plea hearing was held on April 27, 2012 after Appellant's motion to continue the plea hearing was denied.

{¶3} The record of the hearing reflects that there was some pre-hearing doubt that Appellant would appear. According to the trial court, counsel for Appellant was informed that the prosecuting attorney would submit the charges to the Grand Jury for indictment if Appellant did not appear as scheduled.

{¶4} When Appellant ultimately appeared at the plea hearing, there was some initial confusion over which charge would be presented, in part due to the appearance of a different prosecutor. The confusion was resolved during a brief recess that also allowed Appellant to confer with counsel. There is no indication on the record as to the duration of this recess.

**{¶5}** After recess, the state went forward on one count of receiving stolen property, a reduced charge. Appellant entered his waiver of indictment, which the court explained to him was a waiver of multiple state and federal constitutional rights, including the right:

> to have this matter examined by the Belmont County Grand Jury * * * to be served with a copy of the Indictment [if the grand jury finds probable cause and issues an indictment]; have 24 hours to review it and then to proceed with an arraignment. And at arraignment, I would read it to you in open court and advise you of all the rights you have under Criminal Rule 10, at which time you would enter a plea. We would have a judge assigned to your cases and the matter would be scheduled for trial. Now, you're waiving all of those rights by signing this waiver and you're allowing this Bill of Information to be placed before me. And this Bill of Information states that there is a charge here of receiving stolen property in excess of $1,000, which makes this a felony of the fifth degree, punishable by a maximum punishment of 12 months in the penitentiary and a $2,500 fine.

(Plea Tr., p. 6.) After verbally entering his waiver of indictment in open court and signing the information and waiver documents, Appellant entered a guilty plea to the charge of receiving stolen property valued in excess of $1,000. Prior to accepting Appellant's guilty plea, the trial court engaged in the colloquy required by Crim. R. 11 and ascertained that Appellant was a U.S. citizen, had the ability to read, understood

the proceedings, was not under the influence of drugs or alcohol and was entering his plea voluntarily, without threat or promises. The court also established that Appellant was satisfied with his counsel and that he understood the nature of the offense and the specific conduct with which he was charged before explaining the rights he was giving up and the maximum penalty he faced. The colloquy included the following:

THE COURT: Are you entering the plea voluntarily?

[APPELLANT]: Yes.

* * *

THE COURT: Now, have you reviewed the plea agreement with Mr. Pierce?

[APPELLANT]: Yes.

THE COURT: You said [that you] read it. Did you understand all of its terms?

[APPELLANT]: Yes.

THE COURT: And have you discussed all of the terms that are contained in the plea agreement with Mr. Pierce?

[APPELLANT]: Yes.

THE COURT: And are you satisfied with his advice regarding the terms that are contained in the agreement?

[APPELLANT]: Yes.

THE COURT: And are you prepared to sign the agreement voluntarily and intelligently here in open court today?

[APPELLANT]: Yes.

THE COURT: And do you understand that upon acceptance of your plea, the Court could immediately proceed to judgment and sentence in your case?

[APPELLANT]: Yes.

* * *

THE COURT: Do you understand that if you were sent to the penitentiary, the Parole Board could require you to spend up to three years under their supervision upon your release from prison?

[APPELLANT]: Yes.

* * *

THE COURT: And do you understand that if you were convicted of a felony while under the supervision of the Parole Board after your release from prison, the judge who handles your new case could return

you to prison for a minimum of three - - minimum of one year and maximum of three years; * * *

[APPELLANT]: Yes.

THE COURT: Do you have any questions about possible prison consequences?

[APPELLANT]: No.

THE COURT: Do you understand you could be given what is called a community control sentence for up to five years instead of prison, but [if] you violate the terms of community control, you could get a more restrictive sentence, including prison, for the length of time stated at your sentencing and under the conditions I have just mentioned to you?

[APPELLANT]: Yes.

* * *

THE COURT: * * * The Court finds this day that the defendant in open court was advised of all of his Constitutional rights and made a knowing, intelligent, and voluntary waiver of those rights pursuant to Criminal Rule 11. His plea is entered and ordered filed. The Court finds the defendant guilty of receiving stolen property, a violation of 2913.51(A), a felony of the fifth degree, the offense to which he has

entered his plea and the offense which is stated in the Bill of Information before the Court.

Presentence Investigation ordered.

(Plea Tr., pp. 8-15; 17.)

{¶6} The trial court accepted the sentencing recommendation agreed by the parties and sentenced Appellant to five years of community control sanctions. These included, but were not limited to, 60 days in Belmont County Jail, six months at East Ohio Correctional Facility with intensive drug and alcohol treatment, and 12 months of intensive supervised probation.

{¶7} After sentencing, Appellant filed a motion to withdraw his plea on the grounds that he did not understand the sanctions he faced and was not aware that community control sanctions could include jail time. The trial court overruled this motion. Appellant filed a timely appeal of the trial court's denial of his motion.

<u>Assignment of Error No. 1</u>

The trial court erred in holding a plea hearing on this matter when (1) none of the counsel even knew what the charge that the Defendant-Appellant was pleading to would be, (2) when neither the State nor defense counsel were familiar with the case, and (3) the trial court only allotted five minutes for the Appellant to discuss the matter with his counsel.

{¶8} Appellant contends in his first assignment of error that he did not enter into his plea knowingly, voluntarily or intelligently because of the circumstances of his

plea hearing. Although Appellant cites Crim.R. 11, which governs the entry of criminal pleas, Appellant's argument does not address the trial court's actual colloquy and whether it complied with the requirements of the rule. Instead, Appellant contends that the initial confusion at the commencement of his hearing resulted in the improper entry of his plea.

{¶9} "When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim. R. 11 have been followed." *State v. Kelley*, 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991). Section (C)(2) of Crim.R. 11 requires that the court, prior to accepting a guilty plea, determine that the defendant is "making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved," and must make the defendant aware of his or her eligibility for "probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The trial court must also, prior to acceptance, inform the "defendant of * * * the effect of the plea of guilty" and ascertain that the defendant understands that effect as well as the fact that the "court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). Finally, the court must inform the defendant of the rights he is waiving and determine that he understands that, "by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c).

{¶10} The record reflects the plea hearing began with the trial court ordering a recess to allow the state and the defense the opportunity to clarify which charges were being pursued. The hearing re-commenced with the state providing a copy of the bill of information to the trial court, who read the charge in open court and explained the rights Appellant would forego by agreeing to the information. (Plea Tr., pp. 6-7.) Once the parties established the actual charge involved in the plea and the charging document was placed into the record, the record shows that the trial court very carefully adhered to Rule 11. (Plea Tr., pp. 8-15.) It is clear from this record the trial court fully complied with all requirements of Crim.R. 11 before accepting Appellant's plea. Appellant's first assignment of error lacks merit and is overruled.

<u>Assignment of Error 2</u>

The Appellant did not understand the effect of his guilty plea, because no one ever really explained the definition of "community control sanction" to him.

{¶11} Appellant states that the possibility that he may receive jail time as a community control sanction was not adequately explained to him at his plea hearing. He argues that the trial court did not completely satisfy the requirements of Crim.R. 11 because he did not realize that community control could include jail time. In support of his argument, Appellant merely restates the Crim.R. 11 requirements and completely ignores the portions of the record that reflect the trial court's satisfaction of these requirements.

**{¶12}** Appellant was informed on the record of the maximum penalty he was facing and that the trial court was not bound by his agreement with the state:

THE COURT:  You understand that the promises in the plea agreement are recommendations to me, but that I do make the final decision as to what your sentence should be in this case?

[APPELLANT]:  Yes.

* * *

THE COURT:  Do you understand the maximum penalty could be one year in the penitentiary and a $2,500 fine?

[APPELLANT]:  Yes, sir.

(Plea Tr., pp. 9-10.)  Appellant claims that as the trial court did not specifically tell him that community control could involve incarceration, the trial court erred.  However, there is no Crim.R. 11 requirement that the trial court explain community control sanctions, beyond requiring that the trial court inform a defendant if the defendant is not eligible for community control:

In felony cases the court may refuse to accept a plea of guilty of a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a)  Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty

involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

Crim.R. 11(C)(2)(a).  Hence, the rule requires only that the trial court explain the *maximum* penalty a defendant faces, not all possible sanctions.  However, the record in this matter reflects that the trial court went beyond the strictly necessary explanation and, in fact, did explain to Appellant the full ramifications of community control:

THE COURT: * * * Now, you know what community control sanctions are that are being recommended.  They include jail, East Ohio Correctional Center, intensive supervised probation, regular probation, all kinds of different requirements that may be imposed on you.  Do you understand that?

APPELLANT:  Yes.

(Plea Tr., p. 17.)

**{¶13}**  This record contains the trial court's explanation of the legal effect of his plea agreement, the nature of the offense and the maximum penalty Appellant faced, on the record, in open court.  The record also reflects that the trial court went beyond the standard required and explained the possible forms community control sanctions could take.  Hence, this record offers no support for Appellant's argument.  Appellant's second assignment of error is without merit and is overruled.

## Assignment of Error 3

The trial court abused its discretion when it overruled Appellant Lucas's motion to withdraw his guilty plea.

{¶14} Appellant contends that the trial court's rejection of Appellant's postsentencing motion to withdraw his plea operated to work a manifest injustice due on him to the length of time he was given at the hearing to consult with his lawyer and the number of pages in the plea hearing transcript. Appellant argues that we reach the same conclusion concerning his postsentencing motion to withdraw his plea that we reached in *State v. Adams*, 2012-Ohio-5979 concerning a pre-sentencing motion.

{¶15} Appellant's argument and reliance on *Adams* disregards the material difference in pre- and post-sentencing motions contained in Crim.R. 32.1, which provides:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

As we explained in *Adams*:

This rule establishes a fairly strict standard for deciding a post-sentence motion to withdraw a guilty plea, but provides no guidelines for deciding a pre-sentence motion. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).

That said, the Ohio Supreme Court has stated that pre-sentence motions to withdraw a guilty plea "should be freely and liberally granted." *Id*. at 584. That does not mean, however, that a defendant has an absolute right to withdraw a guilty plea prior to sentencing. *Id*. at paragraph one of the syllabus. There must be "a reasonable and legitimate basis for withdrawal of the plea." *Id*.

*Adams*, *supra*, at ¶7-8. Appellant's comparison of the circumstances in *Adams* to his own plea fails, largely due to the manner in which pre- and post-sentencing motions are reviewed. Although Appellant places great emphasis on the trial court's reference to an initial "five minute" recess to allow Appellant to confer with his defense counsel and the state to clarify the charges against him, there is nothing in this record that indicates the actual duration of the recess, nor has Appellant explained how the facts here created a manifest injustice. Appellant has also failed to provide a legal basis for such a finding.

{¶16} Appellant based his motion to withdraw to the trial court on the allegation that he did not understand the penalties he faced because he did not know community control sanctions could include jail time. The transcript of the plea hearing reflects that he was unambiguously informed of the maximum possible penalties he faced, the trial court's discretion in imposing those penalties, and the fact that he could be incarcerated as a part of his community control. After receiving information about his community control, at least a month elapsed between Appellant's plea and sentencing hearings. During this time, he could have filed to withdraw his plea, pre-sentence, under the lower *Adams* standard. Appellant's

decision to wait until after sentencing to ask to withdraw his plea, claiming he lacked information clearly provided to him during his hearing, suggests the type of sentencing gamesmanship the strict postsentencing standard for withdrawal is intended to prevent. This matter appears to involve nothing more than Appellant's "buyer's remorse." Nothing in this record or raised by Appellant on appeal suggests that the trial court's decision to deny Appellant's motion to withdraw his plea was an abuse of discretion. Appellant's third assignment of error is without merit and is overruled.

## Conclusion

{¶17} The trial court engaged in an extremely thorough Crim.R. 11 colloquy before accepting Appellant's plea. Appellant was informed prior to sentencing that jail time could be imposed as part of his community control sanctions. The trial court did not abuse its discretion in denying Appellant's motion to withdraw his plea. Appellant's three assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.